**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| S.M.R INNOVATIONS LTD and Y.M.R TECH LTD, <br><br>                 Plaintiffs, <br><br>     v. <br><br> APPLE INC., <br><br>                 Defendant. | Civil Action No. 6:23-cv-00479-DC <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE
<u>TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

I.   INTRODUCTION ......................................................................................... 1

II.  BACKGROUND ............................................................................................ 1

III. LEGAL STANDARD..................................................................................... 3

IV.  THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE
     CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT............. 4

     A.   This Case Could Have Been Brought in the Northern District.............................. 4

     B.   The Private Interest Factors Favor Transfer ......................................................... 4

          1.   Cost of Attendance and Convenience of Witnesses Strongly Favors
               Transfer ........................................................................................... 5

          2.   Relevant Sources of Proof Are in the Northern District of
               California ......................................................................................... 8

          3.   The Compulsory-Process Factor Is Neutral............................................. 11

          4.   Other Practical Problems Associated with Trying This Case Are
               Neutral............................................................................................. 11

     C.   The Public Interest Factors Strongly Favor Transfer............................................. 12

          1.   California, Where This Case Arises, Has a Strong Local Interest........... 12

          2.   Administrative Difficulties Flowing from Court Congestion
               Slightly Favor Transfer or Are Neutral..................................................... 13

          3.   The Remaining Public-Interest Factors Are Neutral ................................ 14

V.   COURTS HAVE ROUTINELY TRANSFERRED CASES AGAINST APPLE
     TO THE NORTHERN DISTRICT UNDER SIMILAR CIRCUMSTANCES................ 14

VI.  CONCLUSION.............................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   2014 WL 10748106 (W.D. Tex. June 11, 2014) .......................................................... 9

*City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
   508 F. App'x 293 (5th Cir. 2013) .......................................................... 10

*CloudofChange, LLC v. NCR Corp.*,
   2020 WL 6439178 (W.D. Tex. Mar. 17, 2020) .......................................................... 9

*DataQuill, Ltd. v. Apple Inc.*,
   2014 WL 2722201 (W.D. Tex. June 13, 2014) .......................................................... 14

*Dodots Licensing Sols. LLC v. Apple Inc.*,
   2023 WL 4980561 (W.D. Tex. Aug. 3, 2023) .......................................................... 15

*GeoTag, Inc. v. Starbucks Corp.*,
   2013 WL 890484 (E.D. Tex. Jan. 14, 2013) .......................................................... 12

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) .......................................................... 12

*In re Adobe Inc.*,
   823 F. App'x 929 (Fed. Cir. 2020) .......................................................... 13

*In re Apple Inc.*,
   2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .......................................................... 12

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .......................................................... 7, 8

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) .......................................................... 5, 8, 9, 13

*In re Google Inc.*,
   2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .......................................................... 11

*In re Google LLC*,
   2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) .......................................................... 8

*In re Google*,
   58 F.4th 1379 (Fed. Cir. 2023) .......................................................... 14

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .......................................................... 11, 12

*In re Hulu*,
    2021 WL 3278194 (Fed. Cir. Aug. 2, 2021)................................................................. 8

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ...................................................................................... 7

*In re Juniper Networks, Inc.*,
    2021 WL 4519889 (Fed. Cir. Oct. 4, 2021)................................................................. 8

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) .................................................................................. 16

*In re Pandora Media, LLC*,
    2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)............................................................... 5

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014) .................................................................................... 4

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ............................................................................... passim

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................... passim

*Mullen Indus. LL v. Apple Inc.*,
    2023 WL 1486201 (W.D. Tex. Jan. 30, 2023) ......................................................... 15

*Parity Networks, LLC v. Juniper Networks, Inc.*,
    2018 WL 9539505 (E.D. Tex. Aug. 10, 2018) ........................................................... 9

*Smart Mobile Techs. LLC v. Apple Inc.*,
    2023 WL 5540152 (W.D. Tex. Aug. 28, 2023) ...................................................... 6, 7

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017)...................................................................................................... 4

*XY, LLC v. Trans Ova Genetics, LC*,
    2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ............................................................. 9

*Zentian Ltd. v. Apple Inc.*,
    2023 WL 4167746 (W.D. Tex. Jun. 13, 2023) ....................................... 7, 12, 14, 15

## **Rules**

Fed. R. Civ. P. 45(c)(1)....................................................................................................... 11

## **Statutes**

28 U.S.C. § 1400.................................................................................................................. 4

28 U.S.C. § 1404 ................................................................................................................... 1, 3

## I.    INTRODUCTION

In this patent-infringement case, two Israeli companies with no ties to Texas sued a California-based corporation for selling products that use technology that was engineered and marketed in California, and which they accuse infringes their patents. The Western District of Texas is not a convenient forum for this dispute. The Northern District of California, however, is, and Apple respectfully requests that the Court transfer the case there.

Apple is a California corporation, headquartered—as it has been for over 40 years—in the Northern District. The accused technologies—certain parts of Apple's AirPlay and Call Relay features—were developed in Apple's Northern District headquarters. The engineers who work on these accused features are based in California. Relevant technical documents describing these features, and the source code embodying them, are likewise in California. And the witnesses and documents relevant to licensing, sales, and marketing issues in this case are all in California.

In contrast, no witness, document, or evidence relevant to this dispute is located in this District, or anywhere in Texas. The plaintiffs are not Texas corporations. They have no Texas employees or offices. They store no documents in Texas. They did not conceive, reduce to practice, prosecute, or commercialize the asserted patents in Texas. And no witness with any relevant information is within the subpoena power of this Court. This case simply has no ties here.

As no evidence in this case can be expected to come from Texas, this District is an inconvenient venue in which to try it. The Northern District of California is clearly more convenient, and pursuant to 28 U.S.C. § 1404(a), Apple requests the Court transfer this case there.

## II.    BACKGROUND

Apple is a California corporation headquartered in Cupertino, CA. (Ex. A, California Secretary of State Records.) Apple employs more than 35,000 people in or near its California headquarters. (Jobs in California, https://www.apple.com/job-creation/.)

Plaintiffs S.M.R Innovations LTD and Y.M.R Tech LTD (collectively, "Plaintiffs") are two companies incorporated in Israel and wholly owned by the two named inventors of the four patents at issue in this case ("Asserted Patents"). (Compl. ¶¶ 2–3.) These inventors, Oded Shmueli and Benny Yehezkel, reside and work in Israel and have no known connection to this District. (Ex. B, Inventor LinkedIn Profiles; Compl. ¶¶ 8, 13.) Plaintiffs have not alleged that they have any other employees or that they make any products or conduct any business in the United States other than patent assertion. In addition, based on publicly available information, the individual who prosecuted the Asserted Patents is located in Virginia and not in this District. (Ex. C, File History Excerpts; Ex. D, USPTO Practitioner Information for Martin D. Moynihan.)

Plaintiffs' infringement allegations target parts of Apple's AirPlay and Call Relay technologies on certain Apple products such as the iPhone, iPad, MacBook, Apple TV, HomePod, and Apple Watch ("Accused Products"). (*See* Compl. ¶¶ 170, 172, 176, 178, 183–84, 189–90, Exs. E–H.) All of Apple's engineers who work on the accused AirPlay and Call Relay features do so in California—and none do so in Texas. (Leyfman Decl. ¶¶ 2, 4; Circosta Decl. ¶¶ 2, 4.) In addition, nearly all of Apple's marketing, licensing, and finance personnel who have relevant knowledge are in Northern California, and none are in Texas. (Shin Decl. ¶¶ 2, 3; Lee Decl. ¶¶ 2, 3; Spevak Decl. ¶ 4.) Specifically, each of the five Apple employees listed below works in Northern California and has information relevant to this case. Not one works in Texas, works with anyone in Texas in connection with the accused products or features, or has even traveled to Texas as part of that work (Leyfman Decl. ¶¶ 2, 4; Circosta Decl. ¶¶ 2, 4; Shin Decl. ¶¶ 2, 3; Lee Decl. ¶¶ 2, 3; Spevak Decl. ¶ 4):

| Name | Title | Relevance |
|---|---|---|
| **Elena Leyfman** | Engineering Manager, Connected Media | Knowledgeable about the implementation of AirPlay in Apple products. Ms. Leyfman and all of the individuals who work on this feature are located in California. |
| **Nicholas Circosta** | Software Development Engineering Manager, Internet Technologies | Knowledgeable about the implementation of Call Relay in Apple products. Mr. Circosta and all other U.S.-based individuals who work on this feature are located in the Northern District of California. |
| **Marc Lee** | Product Manager, Home and Audio Product Marketing | Knowledgeable about the marketing of the AirPlay functionality. Mr. Lee and his team are located in the Northern District of California. |
| **James Shin** | Principal Legal Counsel, IP Transactions | Knowledgeable about Apple's patent licenses and patent licensing efforts. Mr. Shin is located in the Northern District of California. |
| **Catherine Spevak** | Finance Manager | Knowledgeable about Apple's financial records and about financial data relating to the sales of Apple's iPhone, iPad, MacBook, Apple TV, HomePod, and Apple Watch products. Ms. Spevak is located in the Northern District of California. |

Moreover, Apple's source code and its relevant technical, marketing, and financial documents are also in California. (Leyfman Decl. ¶ 5; Circosta Decl. ¶ 5; Lee Decl. ¶ 4; Spevak Decl. ¶ 4.)

This case is at a very early stage. No scheduling conference has been held or scheduled, and a trial date has not been set. The parties met and conferred on September 26, 2023, pursuant to Civil Local Rule CV-7(G) regarding Apple's motion to transfer. Plaintiffs indicated they will oppose this motion.

## III.   LEGAL STANDARD

A court may grant a motion to transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . ." 28 U.S.C. § 1404(a). The "preliminary question" is whether a civil action "might have been brought" in the judicial district to which a transfer is requested. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

3

If this preliminary requirement is satisfied, courts consider a series of private and public interest factors to evaluate whether to transfer a case. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. (collectively, the "*Volkswagen* factors"). The transferee venue need only be "***clearly*** more convenient," not "***far*** more convenient," for transfer to be appropriate. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

## IV.  THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT

### A.  This Case Could Have Been Brought in the Northern District

Any patent suit may be brought in "the judicial district where the defendant resides." 28 U.S.C. § 1400(b). As Apple is incorporated in California and headquartered in Cupertino, within the Northern District of California (Ex. A, California Secretary of State Records), venue would be proper in the Northern District. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017) ("reside[nce] in § 1400(b) refers only to the State of incorporation").

### B.  The Private Interest Factors Favor Transfer

Apple's witnesses and documents are in the Northern District of California. No witnesses and relevant documents are in this District, and Plaintiffs have no presence of any kind here. No substantive proceedings have yet occurred in this case, and there are no other pending cases

involving the same patents or plaintiffs. Thus, the private interest factors under *Volkswagen* heavily favor transfer.

> ### 1. Cost of Attendance and Convenience of Witnesses Strongly Favors Transfer

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Convenience "is an important consideration for both party witnesses and non-party witnesses." *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021). Here, the convenience of witnesses strongly favors transfer.

A Northern California venue is clearly more convenient for all of Apple's witnesses—indeed, for all plausible witnesses located in the United States. The Apple employees who design, work on, and are knowledgeable about the accused technologies—i.e., AirPlay and Call Relay—are located in California. (Leyfman Decl. ¶ 4; Circosta Decl. ¶ 4.) These witnesses have information relevant to Apple's non-infringement defenses in this case. Similarly, Apple's employees who are knowledgeable about the marketing of the accused technologies, the licensing of relevant patents, and relevant financial records and practices are also located in California. *See supra* at 2–3. These witnesses may have information relevant to damages issues. In total, Apple has identified and provided sworn declarations from five specific witnesses who have knowledge relevant to this case and are aware of where other potentially knowledgeable witnesses work. (Leyfman Decl.; Circosta Decl.; Shin Decl.; Lee Decl.; Spevak Decl.) Each of these five employees works in Cupertino. (Leyfman Decl. ¶ 4; Circosta Decl. ¶ 4; Shin Decl. ¶ 3; Lee Decl. ¶ 3; Spevak Decl. ¶¶ 4.) None of them works in Texas, works with anyone in Texas, or travels to Texas in connection with their work on the accused products. (*Id.*)

Given their locations, it would be significantly more convenient for each of these witnesses to attend trial in Northern California than in Texas. Where the distance between two districts exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Here, Midland and Pecos, where the courthouses for this Court are located, are at least 1,450 miles from Cupertino. (Ex. E, Apple Witness Travel Times at 1.) A trip to Midland would entail either a minimum 4.5-hour, multi-leg flight (*id.* at 2–3), with a minimum 5-hour return (*id.* at 4–5), or a 3.5-hour flight to either Dallas or Austin plus a 5-hour trip by car (*id.* at 6–9, 11–13). A trip to Pecos would require at a minimum the same 4.5-hour flight to Midland (*id.* at 2–3) plus a 1.5-hour drive from Midland to Pecos (*id.* at 15)—for a total of 13 hours, roundtrip. And if this case was to be tried to a Waco jury, a trip there from Cupertino is similarly long—a 3.5-hour flight to Dallas or Austin plus a 1.5-hour trip by car, for a minimum 10-hour roundtrip. (*Id.* at 6–8, 10–12, 14.) This significant travel burden would be erased by a transfer to the Northern District of California. The courthouses in Northern California—in Oakland, San Francisco, or San Jose—are less than 50 miles from Apple's Cupertino headquarters. (*Id.* at 16–18.) It would take witnesses leaving Apple's Cupertino headquarters less than an hour by car to reach the courthouses in Oakland or San Francisco, and a mere fifteen minutes by car to reach the courthouse in San Jose. (*Id.*) Further, a trial in the Northern District would not require Apple's witnesses to incur meal or lodging costs, or to be "away from their homes and families for an extended period of time." *Smart Mobile Techs. LLC v. Apple Inc.*, No. W-21-CV-00603-ADA, 2023 WL 5540152, at *3 (W.D. Tex. Aug. 28, 2023). In contrast, given the travel times noted above, any of Apple's witnesses traveling to Midland, Pecos, or Waco would have to be away from home, family, and work for at least one, if not two nights.

The following table compares the minimum travel required for Apple's witnesses to take roundtrips to the Northern District of California and this District.

| Courthouse | Travel Mode | Roundtrip Travel Time | Overnight Stay? |
|---|---|---|---|
| Northern District | Car | 0.5–2 hours | No |
| Western District – Midland | Flight | 9.5+ hours | Yes |
| Western District – Pecos | Flight + Car | 13+ hours | Yes |
| Western District – Waco | Flight + Car | 10+ hours | Yes |

In these circumstances, the inconvenience of a trial in this District to Apple's Northern California-based witnesses is, as the Fifth Circuit put it, "obvious": "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317 (internal quotations omitted) (quoting *Volkswagen I*, 371 F.3d at 205). And the convenience of Apple's witnesses cannot be afforded less weight simply because they are employed by a party. *Smart Mobile*, 2023 WL 5540152, at *3 (citing *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021)).

By contrast, there are no relevant witnesses for whom trial in this District would be more convenient. No Apple witnesses with relevant knowledge are located in Texas. (Leyfman Decl. ¶ 4; Circosta Decl. ¶ 4; Shin Decl. ¶ 3; Lee Decl. ¶ 3; Spevak Decl. ¶ 4.) Plaintiffs do not appear to have any United States-based employees at all, much less any located in Texas. And the inventors of the patents-in-suit allegedly reside and work in Israel. (Ex. B, LinkedIn Profiles; Compl. ¶¶ 8, 13.) These witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (citation omitted); (Ex. F, Inventors Travel Times). The locations of such witnesses do not influence the witness-convenience factor. *E.g., In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020)*; Zentian Ltd. v. Apple Inc.*, No. W-22-CV-00122-ADA, 2023 WL 4167746, at *6 (W.D. Tex. Jun. 13, 2023) (location of witnesses traveling from the United Kingdom "does not weigh" in analysis of witness-

convenience factor). Indeed, if anything, the inventors' travel times to this Court would be longer than to the Northern District of California. (Ex. F, Inventors Travel Times; *see also* Ex. E.)

In sum, while the inventors living in Israel "will be required to travel a significant distance no matter where they testify," "there are a substantial number of [other] witnesses residing within the transferee venue [Northern District of California] who would be unnecessarily inconvenienced by having to travel away from home to testify in the [Western] District of Texas." *In re Genentech*, 566 F.3d at 1344. Where, as here, "there are several potential witnesses in the Northern District of California and none in the Western District of Texas," transfer is strongly favored. *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021); *see also, e.g., In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *2 (Fed. Cir. Oct. 4, 2021) (holding this factor weighs "strongly in favor of transfer" where most of defendant's potential employee witnesses lived or worked in the Northern District of California, and the plaintiff identified no willing witnesses in the Western District of Texas); *In re Hulu*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) (holding that an "overwhelming number of potential witnesses" from defendant "in or near" the transferee district turned this factor in favor of transfer, despite the presence of two potential witnesses in Texas).

In sum, Apple has identified numerous relevant witnesses in the Northern District of California, whereas there are no relevant witnesses in this District. Thus, the witness-convenience factor strongly favors transfer.

## 2. Relevant Sources of Proof Are in the Northern District of California

The next *Volkswagen* factor, the location of sources of proof, also strongly favors transfer. "This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence . . . ." *In re Apple*, 979 F.3d 1332, 1339. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where

the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (internal quotations and citation omitted). Despite advances in technology that simplify transfer of some electronic files, "precedent dictates the Court consider where sources of proof are ***physically*** located." *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513, 2020 WL 6439178, at *3 n.2 (W.D. Tex. Mar. 17, 2020); *see Volkswagen II*, 545 F.3d at 316.

Here, Apple's sources of proof are located in the Northern District of California. As noted above, the plaintiffs have accused certain parts of Apple's AirPlay and Call Relay features of infringing the Asserted Patents. (*See* Compl. Exs. E–H.) Apple's highly confidential source code for these accused features is stored or on servers accessible to Apple employees in California. (Leyfman Decl. ¶ 5; Circosta Decl. ¶ 5); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-CV-495-KNM, 2018 WL 9539505, at *2 (E.D. Tex. Aug. 10, 2018) (concluding the sources-of-proof factor favors transfer where "specific sources of proof," including source code, were located at defendant's California headquarters). Likewise, Apple's relevant non-source code documents pertaining to the engineering of the accused AirPlay and Call Relay features are in California. (Leyfman Decl. ¶ 5; Circosta Decl. ¶ 5.) Apple's financial, marketing, and licensing documents relevant to the accused features are also located in California. (Spevak Decl. ¶ 4, Lee Decl. ¶ 4, Shin Decl. ¶ 4.)

In addition to the current location of relevant documents, "the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested" to evaluate the ease of access factor. *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014) (noting that "a court should also be mindful of the location of the activities surrounding the research, development, and production of the accused products"). Here, because of all the Apple employees

who work on AirPlay or Call Relay work in California, those features were researched, developed, and tested in California, and not in Texas. (Leyfman Decl. ¶ 4; Circosta Decl. ¶ 4.) This confirms that the access-to-proof factor favors transfer.

In contrast to the many sources of proof in California, none are located within this District. Neither plaintiff has a presence in Texas or has claimed to have documents here. And because the patents-in-suit were allegedly conceived by inventors in Israel, and prosecuted by attorneys in Virginia, there is no reason to believe that documents relating to the patents or the inventors' work are in Texas. *Supra* at 3; (*see* Compl. Exs. A–D, Covers at (76); *see also* Ex. B, Inventor LinkedIn Profiles; Ex. C, File History Excerpts; Ex. D, USPTO Practitioner Information for Martin D. Moynihan).

Similarly, Apple has no known relevant documents in Texas. While Apple maintains offices in Austin, the legally-mandated inquiry is where documents ***relevant to this case*** are located—and none of ***those*** are in Texas. (Leyfman Decl. ¶ 5; Circosta Decl. ¶ 5; Spevak Decl. ¶ 4, Lee Decl. ¶ 4, Shin Decl. ¶ 4.); *City of New Orleans Emps.' Ret. Sys. Ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 297 (5th Cir. 2013) (affirming transfer to where "the relevant documents . . . could be found," despite presence of documents "of questionable relevance" in the transferor forum (quotations and citation omitted)); *Volkswagen II*, 545 F.3d at 316 (analyzing only location of documents "relating to the accident" at issue). To confirm the location of its relevant documents, Apple provided sworn testimony from knowledgeable witnesses, including relevant engineering, marketing, licensing, and finance personnel, confirming that Apple's relevant documents and witnesses are in California. (Leyfman Decl. ¶ 5; Circosta Decl. ¶ 5; Spevak Decl. ¶ 4, Lee Decl. ¶ 4, Shin Decl. ¶ 4.)

Given the many relevant sources of proof in California, and the lack of any in this District, the access-to-proof factor weighs heavily in favor of transfer.

### 3.  The Compulsory-Process Factor Is Neutral

Under the next of the *Volkswagen* public-interest factors, transfer is favored where the transferee court has subpoena power over a greater number of third-party witnesses. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 316–17. A subpoena may compel an individual to testify at trial or in a deposition only "within the state" or "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1).

Here, neither party has identified non-party witnesses in either the Northern District or this District. Nor is there any reason to believe that any non-party witnesses would be within the subpoena power of this District: The asserted patents were not developed, prosecuted, or commercialized in Texas, and their inventors are based in Israel. *See supra* at 3. The availability of compulsory process factor is thus neutral.

### 4.  Other Practical Problems Associated with Trying This Case Are Neutral

No "other practical problems" exist in this case that would make trial more "easy, expeditious and inexpensive" in either California or this District. *Volkswagen I*, 371 F.3d at 203. Here, neither the Northern District nor this Court has prior familiarity with the patents-in-suit, with any related patents, or with either Plaintiff in general. Although Plaintiffs previously sued one other defendant for allegedly infringing the Asserted Patents in this District, that case was assigned to a different judge than this case and was dismissed before the defendant even answered the complaint.[1] (*See generally* Ex. G, Docket, *S.M.R Innovations LTD v. LG Elecs., Inc.*, No. 6:21-cv-

---

[1] Even if Plaintiffs' prior case was still active in this District, which it is not, that fact alone does not weigh against transfer. "To hold otherwise, [the Court] would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district. This is not the law under the Fifth Circuit." *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017).

00386-ADA (W.D. Tex.).) The Court therefore does not have any institutional knowledge that would make trial more "expeditious and inexpensive" here. *Volkswagen I*, 371 F.3d at 203. Nor has this Court yet invested resources in this case: no substantive proceedings have taken place, no scheduling conference has been held or scheduled, and no trial date has been set. For these reasons, the other-practical-problems factor is neutral.

### C.    The Public Interest Factors Strongly Favor Transfer

California has a strong local interest in this case because the technologies that gave rise to this suit were developed by individuals working there. As the remaining public interest factors are neutral or should be given little weight, the public interest factors under *Volkswagen* also favor transfer.

### 1.    California, Where This Case Arises, Has a Strong Local Interest

In evaluating the local-interest factor, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Here, as set forth above, the Apple employees who work on the accused AirPlay and Call Relay functionalities work in California, not Texas. *See supra* at 5; (Leyfman Decl. ¶ 4, Circosta Decl. ¶ 4; Lee Decl. ¶ 3). Plaintiffs' infringement claims thus "call into question the reputation of individuals that work in the [California] community." *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (citing *In re Hoffmann-La Roche*, 587 F.3d at 1338). The local-interest factor therefore favors transfer to the Northern District of California. *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (finding that local interest factor favors transfer where "research, design, and development of the accused functionality occurred in [the Northern District of California]"); *Zentian*, 2023 WL 4167746, at *11 (same).

Conversely, Texas has no local interest in this suit. Nothing that occurred here—beyond uses of Apple products and technologies that occur daily nationwide—is even allegedly connected to Plaintiffs' claims. No witnesses or documents relevant to the accused features are in Texas. *Supra* at 5–11. Nor do the plaintiffs—two Israeli companies who do not sell products, do not have an office in Texas, and do not employ workers in Texas—have any connection to this District. *Supra* at 2. For these reasons, there is no local interest in having this case decided in Texas.

### 2. Administrative Difficulties Flowing from Court Congestion Slightly Favor Transfer or Are Neutral

The Fifth Circuit has found that the court-congestion "factor appears to be the most speculative" of the transfer factors and that when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347 (citation omitted). Further, where a court does consider court congestion in deciding a transfer motion, it must do so based on past data rather than anticipated schedules. *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).

Here, the Northern District of California and this District dispose of cases on a roughly equal timeline. If anything, the Northern District is slightly faster, both before court action (5.2 months to resolution in N.D. Cal. versus 5.5 months in W.D. Tex.) and during or after pretrial (17.2 months to resolution in N.D. Cal. versus 17.4 months in W.D. Tex.). (Ex. H, U.S. Courts, Statistics & Reports, Table C-5 (June 30, 2023) at 2, 3.) Similarly, both districts handle many intellectual property cases, and there is no evidence that this District is less congested than the Northern District of California. Over the last year, 603 intellectual property cases were commenced in the Northern District, compared to 946 in this District. (Ex. I, U.S. Courts, Statistics & Reports,

Table C-3 (June 30, 2023) at 2, 3.) Based on these statistics, there is no evidence in the record that this District processes cases more expeditiously than the Northern District.

Further, "the Federal Circuit recently concluded that this [court-congestion] factor should not weigh against transfer when the plaintiff is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *Zentian*, 2023 WL 4167746, at *10 (quotations omitted) (citing *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Here, Plaintiffs are not engaged in product competition against Apple in the marketplace, and Plaintiffs have not alleged otherwise. (*See* Compl.)

Given its speculative nature, this factor either slightly favors transfer or is neutral.

### 3.  The Remaining Public-Interest Factors Are Neutral

The other two public-interest factors—familiarity with the governing law and avoiding conflict-of-law problems—are neutral. *See Volkswagen I*, 371 F.3d at 203. As between California and Texas, "neither district has a demonstrated advantage in applying federal patent law." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014). Nor would this case implicate a conflict of law. These remaining factors are neutral.

## V.  COURTS HAVE ROUTINELY TRANSFERRED CASES AGAINST APPLE TO THE NORTHERN DISTRICT UNDER SIMILAR CIRCUMSTANCES

The table below summarizes the eight *Volkswagen* factors as applied to the facts of this case. As described in the previous section and shown below, three of the factors clearly favor transfer and another slightly favors, while none weighs against transfer.

| Factor | Impact |
|--------|--------|
| Cost of attendance for willing witnesses | **Strongly favors transfer** |
| Relative ease of access to sources of proof | **Strongly favors transfer** |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Local interest | **Strongly favors transfer** |
| Administrative difficulties flowing from court congestion | **Slightly favors transfer or is neutral** |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflict of law | Neutral |

The balance of factors favoring transfer in this case is even clearer than other cases against Apple in this District which have been transferred to the Northern District of California. For example, in *Zentian*, Apple's request to transfer was granted when "three of the factors are neutral, three favor transfer, and two at least slightly disfavors transfer to the NDCA" because (among other things) the "majority of the relevant Apple employees reside[] in the NDCA." *Zentian*, 2023 WL 4167746, at *6, *11. Similarly, in *Dodots Licensing*, the court ordered transfer where "three factors are neutral, four favor transfer to varying degrees, and one slightly disfavors transfer." *Dodots Licensing Sols. LLC v. Apple Inc.*, No. W-22-CV-00533-ADA, 2023 WL 4980561, at *12 (W.D. Tex. Aug. 3, 2023) And in *Mullen Indus. LL v. Apple Inc.*, the court granted Apple's transfer motion when three of the factors favored transfer and one weighed against. No. W-22-CV-00145-ADA, 2023 WL 1486201, at *12 (W.D. Tex. Jan. 30, 2023).

Here, in contrast, at least three of the relevant factors—including the crucial witness-convenience factor—favor transfer, and none weighs against. Analysis of the *Volkswagen* factors in this case shows that transfer to the Northern District of California is strongly favored.

## VI.    CONCLUSION

The Northern District of California is a clearly more convenient venue than this District to litigate this case. All relevant witnesses and sources of proof are in the Northern District, and this suit arises out of technology designed in California. This District, meanwhile, has no connection to the case. As this case "feature[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009), Apple requests the Court grant its motion to transfer.

Date: September 27, 2023                    Respectfully submitted,


By:  */s/ Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)
Alan E. Littmann (*pro hac vice*)
Doug J. Winnard (*pro hac vice*)
Shaun Zhang (*pro hac vice*)
Jennifer M. Hartjes (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
   BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
dwinnard@goldmanismail.com
szhang@goldmanismail.com
jhartjes@goldmanismail.com

Steven J. Wingard
State Bar No. 00788694
SCOTT DOUGLASS & MCCONNICO
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
swingard@scottdoug.com

*Counsel for Defendant Apple Inc.*

**CERTIFICATE OF CONFERENCE**

I certify that on September 26, 2023, counsel for Defendant Apple Inc. conferred with counsel for Plaintiffs S.M.R Innovations LTD and Y.M.R Tech LTD regarding the foregoing Motion to Transfer. Plaintiffs' counsel stated that S.M.R and Y.M.R oppose Apple's motion to transfer this case from this District to the Northern District of California. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.


Date: September 27, 2023                          _/s/ Michael T. Pieja_____
                                                  Michael T. Pieja


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on September 27, 2023.


Date: September 27, 2023                          _/s/ Michael T. Pieja_____
                                                  Michael T. Pieja